May it please the Court and Counsel, my name is Kimberly Dieter. I'm with the Federal Defender's Office, and I represent the defendant appellate in this case, Mr. Kenneth Southwell. There are a number of issues that I would like to speak to this morning, but first I would like to start off on the issue of the jury poll or the absence of a jury poll in this case. Jury poll? I would begin my argument with a question. In our system of justice, if the government is required at the conclusion They were polled, right? They were polled only on their verdict with regards to guilt or not – if guilty was their verdict at the close of the trial. As I understand it, the clerk said – or the clerk read the verdict, and then the judge polled the jury, is this your true verdict, and each jury said yes. They didn't respond verbally. They raised their hands. There was a showing of hands, and that's correct. However, before the jury was discharged, defense counsel requested that they be polled on the issue of insanity because there was a question very shortly before their verdict. You mean because there was a note from the jury before the verdict came in asking about that instruction. Correct. Has there ever been a case that said you have to poll them twice? There's not a case that says you have to poll them twice. However, there is a Ninth Garcia-Rivera, in which there were some confusions regarding the jury instructions. I believe in that case, there were three possibilities where the defendant could have been found guilty, possession – a felon in possession of a firearm. In the instructions, they were given three possible dates. There was some confusion as to the admissibility of evidence regarding one of those three counts. The jurors went back to deliberate. They came back, found the defendant guilty. The question remained of which particular date when that felon had possessed or when the individual had possessed the firearm, because there was a question about the evidence of one. This Court held that the district court failed to poll the jury when requested about specifically which date they were referring to. So, yes, there has been law in this circuit regarding a second polling. In that case, did the Court instruct the jury that there were three dates and they had to choose one and be unanimous on it? Correct. It was A, B, or C. That is correct. And they did not pick – there was no when they returned the verdict. Did the Court ask – or did the defense ask for a special verdict? In our case? No. The one you're relying on. I'm sorry? The one that I'm discussing, I believe in that case the defense had objected to one of the dates stating that there was evidence that was inadmissible regarding that date, and they had said, I believe before the jury deliberated, that they were objecting to that date. And then after the jury came back, there was a question. In this case, and again, the district court has a duty to make sure that the jury is unanimous in its verdict, and that if there is a question that it's not unanimous, then the district court has a duty to explore that further. And in this case, the question was, can we convict if we believe the government met its burden of proof on the elements making up 844i, but we are not unanimous on the issue of insanity? In this case, the court told the jury there were three possible verdicts, and they had to be unanimous on whichever verdict they returned. Isn't that true? Yes, Your Honor. And the jury was polled and was unanimous on the verdict they returned. There was a question about which verdict the district court did not bring them back to poll, and the Ninth Circuit found that that was unusual. Counsel, there's a phrase there, bring them back. I used to do something that I picked up from all the judges I ever appeared before, that they did the same thing. Before that jury was discharged, they'd say, is there anything else, counsel? All judges, in my experience, do that. And even the ones that don't, things aren't moving that fast. Lawyers can jump up and talk without the judge asking them to. Correct, Your Honor. What did the defense lawyer say before the jury was discharged? Your Honor, I want you to poll the jury again on this insanity thing, because they had a question about it that indicated possible confusion. And that defense attorney was me, Your Honor, and no, I did not, but I did request the poll before they were discharged. The jury was in the courtroom. The judge asked for a showing of hands. There was the showing of hands. The judge states to them, the judge stated to them, please return to the jury room and wait there for me. I will be there with you directly. He did not disperse them. They were not discharged at that time. So you did ask for another poll before they were discharged. Before they were discharged. There's a Seventh Circuit case that says, and that is United States v. Marinari, when a jury remains as an undispersed unit within the control of the court and with no opportunity to mingle with or discuss the case with others, it is undischarged and may be recalled. And that was the case in this instance, Your Honor. Specifically, please, specifically, that would be on pages 597, 598, and 599 of the excerpt of record. And I believe that happened within a matter of minutes. So to go back to my question. On those, do you have those pages in front of you? I do, Your Honor. What is it that the judge told the jury after they had returned their verdict? Specifically. I apologize. It is, and I, it's page 611. Pardon me? It's page 611. I apologize. 611. The judge had said, after he had accepted the verdict, he said, Ladies and gentlemen, I wish to thank you for your service. It's an important responsibility of being a citizen. There can be no jury trials without jurors, without people who come forward and fulfill that responsibility. It is appreciated very much. I'm going to ask you, please, to step to the jury room and remain there briefly. I would like to speak with you for a few moments. I shan't keep you long. And then you can get about your business. Thank you for your service again. Would you please go to the jury room? I will be with you directly. At which time the jury was excused, the Court discussed pre-sentence matters, asked if there was anything else that needed to be addressed, at which time defense counsel said yes in light of the question given by the jury. We would ask that the jury be polled on the issue of insanity, which, again, goes back to the true concern here, that there was not a unanimous verdict in this case. The jury asked can we convict if, but not if. Now, what is there to make us – the jury asked a question, and it was answered in the instructions. And the judge said follow the instructions. Is that right? But it wasn't – it wasn't clearly. It went outside. It went beyond the question. And it seems that there is – I don't know. I think what this counsel asked is absolutely correct. The – they asked a question, and the judge set in the instructions. But, of course, the instructions were confusing. The instructions did not give a clear answer, so sending them back to the instructions didn't help, because what happened is they ran into inherent ambiguity of the jury verdict form and of the instructions. That was the problem, wasn't it? They did exactly what they were instructed and then ran into a – ran into exactly the problem that anybody reading this instruction with this problem in mind would have realized, and that is that anybody who is going to find him guilty, if a jury is going to find him guilty – I'm sorry, not guilty by virtue of insanity, which is option number three. Yes. Also would, of course, have to answer yes to the first option. Yes. You can't answer question three yes without also answering question one yes. And yet the instructions say you can only come up with one answer. This is pretty wrong. It is largely impossible to do that if you answer – if you answer – if you believe the – if the jury believes that the defendant is not guilty by reason of insanity, they cannot answer question yes in the negative. They have to answer – I'm sorry, question one in the positive, and they also have to answer question three in the positive. So they ran into a – this was a badly constructed instruction. They ran into exactly the problem anybody was – that looked at it carefully would have realized, and they asked for further instructions. And the judge, instead of clarifying it, said go back and do as you are told. And you can only come up with one verdict. And, of course, it was impossible to do that. So that was the problem. Yes. And the polling business, which you chose to lead with, is sort of sidelined. I'm sorry? This polling business that you chose to lead with is really sort of a sideline. It really doesn't matter. At most, if they had been polled and they had said, oh, no, yes, we are unanimous on this other thing, it would have avoided – it would have negated prejudice. But the judge exercises discretion, which he probably had not to do that. So our one chance of saying no prejudice, no harm, no foul is gone. Yes. So what we have is a defective set of instructions, an opportunity by the judge to fix it, which he chose to bypass, and an opportunity to find out that might have been harmless, which he also chose to bypass. Yes. And there was a request – It's as simple as all that, isn't it? That works, Your Honor. I mean, there was a request as to – by the court as to how to deal with the question from the jury and what the answer was. No, no. They ran into exactly the problem that this was a defective product, and it's sort of like buying one of those saws that cuts our fingers. They took it home and they cut our finger. It was badly designed. It was clearly designed to create this very problem. And the judge, for reasons of his own, chose to close his mind to the problem. It's – you know, sometimes it happens. How do judges do that? Yes, Your Honor. The other – and I don't know if – That's why we have the reverse stamp here. And I don't know, then, if that renders moot perhaps other arguments. The other issue that I raised is the voluntariness of the confession and whether or not it should have been admitted, and that the defense's contention was that it was taken in violation of Miranda and that it should have not have been. Well, why is it custodial? I thought it was a – the room with the door open, he came and went and made phone calls as he liked, went outside by himself. No one ever told him he can't leave. Why is it custodial? Well, no one ever told him that he could leave. No one said you are free to leave.  Did anyone tell him he couldn't? No one told him that he couldn't verbally. Did he ever – But the actions indicate – I understand nobody told him he could leave. But I want to know, did anyone ever tell him he couldn't? Not verbally, Your Honor. Did he ever ask, can I go? No, he did not ask. I think he said, can I go outside, didn't he? He said, can I go outside. And what did they say? They said yes, and they went outside with him. He needed to go to the bathroom, and they went with him to the bathroom. I think you have to – obviously, you have to look at all the circumstances. And one of the things that the judge noted in his opinion, which was a 15-page opinion on this issue that was filed in December well after the notice of appeal was filed in this case, is that the judge completely ignored the fact stated by the ATF agents on cross-examination as well. That, one, Mr. Southwell came voluntarily, but it was based on a ruse. They called and said, come on down, we want to talk to you about something innocuous that had to do with the fire. Mr. Southwell – Ruse is okay. – was involved in that. Ruse is fine. Government law enforcement isn't allowed to lie. It's allowed to pretend they're your friend. Yes. You've had some clients who've had – probably have friends in the police, right? Yes, Your Honor. Probably more than you've yet to admit. They are allowed to do that, certainly. But in the context – No, no. They're not your friend. Well, I think the difference here is that one of the circumstances that the Court has to look at to determine whether it's custodial in nature is did the police say to the individual, you know, you're a suspect in this case, will you come on down, we want to talk to you about this? That's not what happened. They said, we want to talk to you about something completely unrelated to you being a suspect. Once he got there – Well, it seems to me this cuts entirely the other way. If they call you down and say, you're a suspect in a case, then you might feel you can't leave, that you're really in custody. If they come and say, hey, you know, we want to call – you would like to come to the police station because we want to consult you about air conditioning, you know, how to, you know – or, you know, something completely unrelated, then you might feel, well, I'm here being helpful, but I'm not a suspect in a crime. I can leave any time. So not telling him he's a suspect actually cuts the wrong way for you. Well, not actually. If you look at all of the circumstances combined, it was not his understanding that he was a suspect in any way, shape, or form. Most people that may feel guilty about something, that may feel that they may be guilty, would have a red flag raised to them when they get a phone call from the police saying, hey, why don't you come on down. And normally, they understand there's no reasonable connection between that individual and, say, the air conditioning system at the police station. For Mr. Southwell, there was a reasonable connection in that he had worked on this fire as the incident commander for some time. So he had no idea. So I don't think that it does cut against our argument as part of the claim. Would you please come down? Or did they call him and say, would you please come down? They called him and said, would you please come down. And actually, they called him earlier in the day and made an appointment for later in the day. So they didn't bring him down. They called him up and he said, okay, I'll come down. And they made an appointment. Yes. I'm thinking if the police ever called me up and said, would you come down, I'd say, no, I don't care to take the time. I don't want to have to drive and park. You come to my office and chat with me. Well, I think it's because it was in the context of whether or not – it was in the position as incident commander of the fire that they had called him to come down. Does he have an office at the fire station? Mr. Southwell does not. And the ATF office is separate. This is a little tiny town of Fairfield, which is outside of Spokane. The ATF office is in – do you want to call it downtown Spokane? It's in commercial space. It's in a commercial space. Mr. Southwell went there. There was nobody else. Two agents were there. They sat him in a conference room. He knew they were ATF agents. They flanked him on either side of a conference table. They began asking him questions about CAD reports and placements of fire engines, and then they started going into something totally unrelated and surprising to Mr. Southwell, and that was the incident of the five house fires that had happened in Fairfield previously during the summer. Once they began asking him those questions and pressing for an answer, at first he denied. And then they pressed – You're tying very hard, but you have a very steep climb. You have a district court's factual findings here. And, you know, I see you sort of arguing as you would to the district court, and maybe your argument is plausible, maybe the argument isn't plausible, but you really have to persuade us as a matter of law this was custodial or that the district court was clearly erroneous in finding that this was voluntary. And I'm – Then I'll address that. I just have a hard time with that. I'll address that, Your Honor, in speaking of the voluntariness issue. In the district court's opinion, they completely ignored the fact that there was one whole day's worth of testimony from psychological experts. One of them was for the defense, and he took up most of that day. He testified that Mr. Southwell did not have – That probably reflects what the district judge thought of that psychological testimony. I'm sorry? Probably reflects what the district judge thought of that psychological testimony. Certainly. Maybe he thought it was drivel. Maybe he did, but he needs to clarify. It's not like I – It matters, actually. I mean, suppose that a man is of very low intelligence and very suggestible. As long as the police don't do anything wrong, I don't see why it's even relevant that he's of low intelligence and suggestible, or let alone that the police would know that. I mean, how would you know that a guy who's actually doing all right here in this little town is as unintelligent as we find that he is? Well, if that was the district court's opinion, they needed to address that. The facts that – I don't know if you need to talk about it for that to be your opinion. I'm thinking – I remember reading Miranda in law school, and it was very clear at the time and in the circumstances of the time, it was a response to wrongful conduct by police, not a response to criminal defendants falling into confessions when they might have beat the rap had they known to keep their mouth shut. The idea was the police were using the third degree, as they used to call it then. So long as the police behave themselves and do everything they're supposed to, no custodial interrogation without a Miranda warning, I don't see why it even matters that a man has psychological difficulties and mental limitations. I think the test is a reasonable person in his shoes, and in his shoes connotes his mental state. He'd been up for several hours. Oh, so you're saying the reason it matters is a reasonable person in his shoes, including his level of intelligence, would think he was in custody. Is that it? Now I understand. I didn't understand before. Yes, Your Honor. I'm almost out of time. Are there any other questions? Thank you. We're here for the government. Are you going to just stand there? Excuse me, Your Honor. Are you going to just stand there? No. May it please the Court, Tom Rice for the United States. I'm an assistant United States attorney from the Eastern District of Washington. On the issue of polling, there was an articulation of the issue here today that was not presented to the district court judge at the time the polling question. The problem is you had a defective form, a form that was calculated to tip up a jury. There was no way you could answer that form without getting into trouble. The jury cried for help, and the district judge ignored them and told them to go back and do the impossible. And now we don't know whether or not they were unanimous in rejecting the affirmative defense. This is your problem. If they polled, then we might know. The jury would come back and say, look, we were unanimous on this. Then you might have a claim now that this was harmless. But unfortunately for you, the district judge exercised his discretion not to poll the jury. So we're left with doubt. Well, the judge did poll the jury, and they did indicate that they were unanimous. They were unanimous very well on the first question. We're given three questions, right? Yes. Instruction 21. And they found that each of the elements of the defense was true. Hold on. I'm confused. I thought it was just one question. What page should I look at? Can I finish my question? Of course. I just want to follow up. What page? Your Honor, instruction 21 was in the excerpt of record at page 729 through 730. Thanks. Okay. If you unanimously find the government has proven each of the elements of the offense beyond reasonable doubt, the presiding jury will write guilty on the verdict form. You see that? Yes, Your Honor, that's correct. Okay. And they could be unanimous on this. And that is what they did, yes. Okay. Now, go to number three. If you unanimously find that the government has proven each element of the offense beyond reasonable doubt, but unanimously agree that the defendant has shown by clear and convincing evidence that he was insane, as defined in this instruction, then the presiding jury can write not guilty by reason of insanity in the verdict form. That's correct. Right. So let's say you are a jury where you believe the elements have been proven, and you believe the guy's insane. Which one of these do you check? Your Honor, the verdict form would be checked guilty in the first, and then it would be checked not guilty by reason of insanity. So what you would do is you would have to check one and three. Yes. And the verdict form would come back that way, and the district court would say no. Were they instructed that they had to pick one of those? Excuse me, Your Honor? Were they not instructed that they had to pick one of those? No. They were instructed that their verdict must be unanimous. Unanimously reach one of three verdicts. Look at the instruction 21. You may unanimously reach one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. But the instruction clearly says you've got to pick one of these three. And you've just said the only way you can do number three is by also checking number one. It's the government's position that... I just asked you a question. Do you stand by that? I stand by that if there was a... You can't check three without also checking one. No, I think you could check three because the lead-in phrase... How could you check three without checking number one? The lead-in phrase says if you find that the government has proven that he's guilty, but you unanimously find that he's insane, then you can check number three. Fine. How do you then not also check number one? I guess you reserve the jury foreman's checking of the box on number one. Well, but you have to answer the question. You have to go to each of these questions and either be able to answer them, able to say yes or no, or not be able to answer them. Okay? They're instructed to answer these questions. Now, if you find three to be the case, you have already found all elements of the crime to have been proven by the government beyond reasonable doubt. How do you not also check one? This is the problem they ran into. This is the problem they had. They come out and they say, look, we have found one to be the case, but we can't figure out about number three. And the judge says, you go back and you be anonymous and follow the instructions. The instructions says you just pick one of these. How are reasonable people supposed to make heads or tails of that? I wouldn't know how to do it if I were in the jury. I would say, gee, I think those lawyers are crazy. And I think that judge must have been screwed as well as done if I'd been on the jury. They asked a perfectly legitimate question that clearly revealed that they had doubts, that there were jurors on that panel who thought that he had proven insanity by clearing convincing evidence. What do we know that would make us believe that, in fact, they unanimously rejected that defense? By the verdict form that they filed with the judge and the natural consequence of that. No, no, no, no, no, no, no, no, no, no. Explain it to me. Let's say you're in a situation. You've got 12 jurors and all of them believe that the elements of the crime have improved. OK? Yes. Six of them believe and believe to this day, the day they come out, that he, in fact, is insane. Yes. How do they indicate that on the jury form? They have not found him unanimously not guilty. How do they indicate on the jury form? They cannot indicate that because that is not a unanimous verdict. The defense has not proven that what they write is reasonable. Why aren't you saying that what they must write, then, is guilty? They've unanimously found all the elements of the crime proved beyond a reasonable doubt. They have not unanimously found the elements of insanity proved by clear and convincing evidence. Why wouldn't they just write guilty? They would find guilty, Your Honor. How come you didn't say that? I must be missing something. Oh, I thought I did. I'm sorry. They would find him guilty. Which is what they did here. But if they are hung on the question of insanity, that means it's a hung trial. It's a hung jury. If they cannot agree unanimously that he is not insane, like we agree on that, they are hung, even though they think all the elements of the crime have been proven. Twelve jurors believe the elements have been proven. Six of them think he's insane. And that's the state of the jury under the deliberations. What is the result of that if that is revealed to the court? It's guilty. No, it's a hung jury. It's a hung jury. No, no, no, don't say it. It's a hung jury. Yes? It's not guilty. It's a hung jury. It's a hung jury on the unanimity of an affirmative defense. It's a hung jury. It is a hung jury. You have to go back and retry the case. The guilty verdict doesn't count because six jurors believe him to be insane. Now, if we disagree on this basic point, then we have to go back much farther than this. But you're not going to disagree with me on that because that's black-letter law. Twelve believe the elements have been proven. Six believe he is insane. What is the answer? The defense has not proven an affirmative defense beyond a reasonable doubt. On the other hand, the government has proven. Just give me an answer. I do not concede. I cannot concede that that is a hung jury. I don't concede that. I would have to find a case. The defense has not found a case. I have not seen a case that says if you're hung on an affirmative defense. But that is quite clear. I mean, that's not even seriously enough. And maybe that's why you're confused about this. But the jury has to be unanimous in rejecting an affirmative defense in federal court. I want to note for the record that this instruction was not objected to by the defense. It doesn't matter. It doesn't help you here at all because you have a jury comes back and says we are confused. And the defense lawyer stands up and says we need to clarify this. And the judge says no. I'm going to stick with what I have. So whether it's objected to begin with or not, maybe nobody saw the problem. Should have. Really poor lawyering work here, I think. But okay. But once the jury comes back and says, look, we have a problem here, you agree that everybody in the courtroom must make sure the problem is solved, it's a legitimate problem. If you articulate the problem correctly. I don't believe the problem is articulated. No, I don't think jurors are. Jurors are not required to have lawyers and articulate the problem correctly. I think it is enough to show they've got a legitimate problem, and then it's up to the wizards in the courtroom to come up with some other solution. Didn't the jury articulate the problem correctly? Didn't they say suppose that 12 of us believe that all the elements were proved beyond a reasonable doubt, but some of us may not agree as to the question of sanity. Isn't that the problem that they presented to the court? And did the court answer that? That was presented the day before, and the court did answer that and reminded them of the unanimity. How did the court answer that as to what do you do if half of you or one of you thinks he's insane? The court answered it by referring him back to the jury instructions, and specifically jury instruction 21 that says that you must return up one unanimous verdict. Counsel, why isn't it a hung jury if the jury has agreed that the elements are proved, but in disagreement on whether an affirmative defense is established? Insanity is an unusual affirmative defense because the burden of proof is on the defense under the federal statute, but there are lots of affirmative defenses that come up. I guess the most common is entrapment. I'm thinking why isn't it a hung jury if the jury is divided rather than unanimous on the affirmative defense? And is there some authority you know of that helps us answer this question? Your Honor, I don't know the authority on that. And I'm sorry, I cannot address that point. It just seems odd to me that if the government proves beyond a reasonable doubt all the elements of the offense, and it's the defense's failure of proof by clearing convincing evidence as to insanity, how that would vitiate the guilt in it. And I don't know the answer to that. And that was not briefed. When you get a case where the jury is 6-6 for conviction or acquittal, that's a hung jury. Yes, in a standard case. When you get a jury that's 12-0 on whether the defendant committed the crime but 6-6 on entrapment, what's that? I don't know the answer to that, Your Honor. Again, I don't know the legal significance of the affirmative defense aspect and whether or not the jury has to be unanimous as to the case. Well, we have a case by the name of Giuseppe that in a civil context holds that the jury must be unanimous. But Giuseppe relies on criminal cases. Giuseppe relies on criminal cases. It's affirmative defense. The jury has to be unanimous. It would be a fortiori in a criminal case. Now, assuming you're with me on this construct, I think you're going to find this is what the law is, that the jury has to be unanimous one way or the other, whether he's insane or not insane. And they come back and they say, look, we agreed essentially as to the elements of the offense, but someone thinks he's insane and someone thinks he's not insane. What are we supposed to do? Agree with me that the judge should have clarified to them what they're supposed to do. Yes, and he did in this case. He said, return it. Go back. No, but he sent them back to those confusing instructions. Is the response the judge actually gave this response on H-59 where he said, if you're able to reach a verdict, only one unanimous verdict may be returned? If I'm looking at the right thing, then it means he didn't just say, reread the instructions. He actually told them only one unanimous verdict may be returned. Yes, but the paragraph before that directs him back to the instructions. Yes, I know that, but he didn't limit himself to the paragraph before that. No. Okay. Does it matter? Does the second paragraph matter? I don't know that Your Honor's question, whether it matters or not. I take that as referring back to the instructions, and the instructions read as a whole includes Instruction 21 with. Did the judge talk at all about why he wrote these particular words? Sometimes when a jury sends out a note, the lawyers are assembled and there's a colloquy between the judge and the lawyers about what he should say in the note, and that throws a lot of light on it. I believe there was a short colloquy. I don't think it shed any light on the issue. But you see what it did. The jury comes back and says, we are unanimous on the elements. We're not unanimous, which is option number one. And we're not unanimous as to option number three. And the judge comes back and says, well, you've got to have only one. Well, they already have one. They told him they already have one. Since they can only have one according to what the judge tells them, then just don't bother working out the rest of it. So he gets back to the inherent problem in the instructions, that you can't have just one. Because if you have three, you necessarily have to have one as well, which is how he started out saying it. He said they check guilty, and then they check not guilty by reason of insanity. They check one and three. So they can't get to insanity by picking just one. And yet here we have the judge telling them that you only have to pick one. I respectfully disagree that you can't get insanity finding by checking two. You can just check three because of the way number three is organized. How can you just check three? The jurors are going down and answering these questions, okay? How would they not answer yes to question number one? Look, let's read it all together once again. Okay, so this is a jury that finds that the government has proven their elements beyond a reasonable doubt and that the defendant has proven his by clearly convincing evidence that he is insane. So they are reading down. They say, okay, now we're going to be really careful. We're going to follow the judge's instructions. He says, okay, the first question is, if you unanimously find the government has proven each of their elements of offense beyond a reasonable doubt, the presiding juror will write guilt in the verdict form. And everybody looks around and says, do you think, yes, it proved beyond a reasonable doubt. You know, they all go around the table and say, yes, it did. In fact, the only way we get to this insanity business is by first finding this to be the case. Now, how do they leave this unanswered or how do they answer it no? Well, the question is pretty straightforward. I didn't have to lie. I would only say that they would read the entire instructions before. I would read the entire instructions as well, and I would have no clue how I could fill out just one. And what I would do if I were in that jury room is I would check both of them because both of them are answers. But what I would do is go back and ask for more help from the judge, and instead the judge comes back and says, but you answer only one. I bet you right about now you wish that judge had polled that jury before letting them go, because if they come back and say, oh, yeah, we resolved that, all of us thought he was not insane, you'd be off the hook right about now. You should have supported defense lawyers' request for polling. You'd be better off today. Anyway, anything further? No, Your Honor, except with respect to the confession issue, the extensive findings by the district court concerning that the defendant was not in custody, that the statements were voluntarily made by a 46-year-old man that was called down to the police station, was given breaks when requested to give breaks. Before you sit down, I want to make sure I understood one of your answers a long time ago to Judge Kuczynski. You said that they would have to, under this instruction, check both one and three. If they did check one and three, then the court could not punish the individual because he was insane. Isn't that true? Yes. If box number three was included in the checked boxes, it would be a finding of insanity. I thought you said that the answer here is to check both. Well, in the question, I think I did say that, Your Honor. That doesn't make sense to me. Tell me what's correct about that. Well, I'd like to correct that statement. I think that if you read the entire instruction and the jury unanimously found him insane, that they would check box number three and return that to the court. And only box number three? Yes. How could they avoid checking box number one? What is it that says, if you check three, don't check one? I don't think they had boxes, did they? They had to write a verdict on a line. I think you're right, Your Honor. I assume you have it right in front of you. I have it with a tab. But go on. Answer, Judge. In either event, whether it was a box or they had to write it in the line, it would be a finding that he was unanimously found to be insane. And my misstatement, I guess I should say, by checking box one and three, would certainly have prompted the court to inquire if that was an ambiguous verdict. I guess what I'm saying is how could they avoid finding one and three? If they find three, how could they avoid also finding one? One is literally a method. If it was there, they have to answer the question by saying guilty. That's absolutely correct. There's nothing that says, but if you go to three and you find three, then you don't have to bother doing one. There's nothing like that. And that's exactly what the jury was looking for when it asked for help. It said here we're in a situation where we all agree on number one, but we're now at number three, and number three we're split on. We don't know what to do in that situation. And the judge says, well, you've got one. You're stuck with it. One, you only get one of these. Not helpful. Not helpful. I see my time's up. Thank you. You did not support when the closing counsel asked for second polling of the jury. I think you didn't jump up and say, Your Honor, we want to know, too. I did not. No, not based on the articulation given by the defense attorney at the time as to what the polling would accomplish. And then the court made findings. It's an important lesson to you, being courteous. Maybe she should have moved a little faster, but things happen in court quickly. And, you know, a courtesy to opposing counsel often pays off handsomely. Is it true the jury was not discharged? It was still available in the jury room? Yes. They were remanded to the jury room, and then there was a colloquy on the record. Did your judge say the magic words, you are discharged? No. I've seen many times in trials where opposing counsel has come, you know, is inclined to rule against counsel. And the other side stood up and said, we don't have an objection, Your Honor. And sometimes it's nice to do that. Sometimes it winds up helping you out. If I had the forethought of today's hearing, that would have saved me. Well, not out of self-interest. Sometimes one does it just out of courtesy for opposing counsel and because knowing a little bit more about what's going on with the jury is also helpful. I do want to say that it could only have helped you. Yes, Your Honor. The excerpt of record that I find this colloquy on is pages 818 and 819. I can't find it at 611, which counsel cited. Is it different from what they're citing? No, Your Honor. She read it nearly verbatim. But if the Court were to look at it, I believe I'd direct the Court's attention to 818. I have been most impressed that she had done that. And assisting as attorney stood up and said, we support. I was very impressed by that. Thank you, Your Honor. Okay. I don't remember whether you had any time left, but I believe you didn't. Case with argument staff submitted. We are adjourned.
judges: Alarcon, Kozinski, Kleinfeld